GLADNEY, Judge.
This action ex contractu was brought by Herritage Tool & Supply Company against Webline Industries, Inc., to recover the sum of $14,713.86 representing services rendered in connection with a contract awarded to the defendant by R. G. Le-Tourneau, Inc. Trial on the merits resulted in a judgment in favor of Webline Industries, Inc. and plaintiff has appealed.
The case turns upon a factual issue concerning which many of the circumstances are not in dispute. During December of 1965 Herritage learned from LeTourneau that it was in the market for a conveyor system in its munitions division plant located in Longview, Texas. Herritage contacted Webline and the two companies, represented by Elmer Herritage and Charles W. Webb agreed to submit a bid proposal to LeTourneau. It was contemplated that Herritage would submit the proposal in its name which would include a proposal to perform the work by Webline for $295,231 which amount included a six per cent share, or $17,713.86, as compensation to Herritage. The latter obligated itself to furnish aid and assistance through liaison work and other services. The contract between Herritage and Webline was oral' and the compensation to Herritage was primarily for securing the contract. To Webline’s proposal Elmer Herritage added $4,846 and submitted to LeTourneau a bid of $300,077. Subsequently this bid was reduced to $295,231 after Herritage consented to eliminating the $4,846.
Elmer Herritage then arranged for a meeting which was held January 26, 1966 at the LeTourneau plant for the purpose of discussing the bid of $295,231. At the *836 meeting LeTourneau was represented by C. V. Hogan and George Richard Smith; Herritage was represented by M. V. Wynne and Willis M. Allen and Webline was represented by Charles W. Webb and Billy Ray Harvey. During the first part of the meeting the representatives of the three companies discussed the question as to which company the order was to be issued and following a phone call to Elmer Herritage in Dallas, in which Hogan and Webb participated, it was agreed the purchase order should be written directly to Webline.
Just prior to adjournment for lunch, Hogan asked to see the proposal submitted by Webline to Herritage, and this was supplied by Webb. After its examination Hogan declared the six per cent to be received by Herritage amounting to $17,713.-86 was excessive and would not be included in the total bid of $295,231. Hogan then indicated that his company would offer Webline the sum of $277,517.14 to which it would add the sum of $5,000 to be paid to Herritage as compensation for the latter’s services. Charles Webb told Hogan he could not agree to the omission of the six per cent commission unless Herri-tage would accept the $5,000 as its compensation under the contract, and upon consideration of the new offer made by Hogan, Webb requested that the Herritage Tool & Supply Company signify its acceptance. At this point Wynne discussed this matter with Hogan. Allen apparently deferred to the authority of Wynne and took little if any part in the discussion. Afterwards the representatives of LeTourneau and Web-line concluded that Wynne and Allen had given the requisite consent for Heritage Tool & Supply Company and the contract was executed by LeTourneau and Webline for a total sum of $282,517.14.
It seems proper that we should here summarize and repeat the sequence of events prior to the execution of the contract, omitting only a resolution of the question of whether or not the representatives of Herritage Tool & Supply Company did in fact evidence their approval of the new terms contained in the proposal or offer by Hogan. Elmer Herritage, President of the Herritage Tool & Supply Company, persuaded Charles W. Webb, President of Webline Industries, Inc., to submit a joint bid to LeTourneau which bid was in fact submitted for the sum of $295,231. This amount included six per cent to be paid by Herritage for its work in obtaining the contract and aiding and assisting Web-line who would do the work. The bid was placed in the name of Herritage Tool & Supply Company. While in the hands of Elmer Herritage he altered the amount of the bid by adding the sum of $4,864 but this sum was later deleted by LeTourneau with his consent. A conference was held at LeTourneau’s office in Longview to consider the proposal as submitted. This meeting was held on January 26, 1966 and each of the three companies involved were represented. Elmer Herritage was absent in Dallas and his company was represented by Wynne and Allen. Upon learning of the six per cent fee to be received by Her-ritage, Hogan rejected the Herritage bid proposal and made a counter offer, deleting six per cent but adding in lieu thereof $5,000. Webb would not accept Hogan’s offer unless approved by the Herritage Tool & Supply Company.
All those present at the meeting other than Wynne and Allen testified that the latter, acting on behalf of Herritage Tool & Supply Company, evidenced their consent to the new proposal without objection. Elmer Herritage testified that he was not informed of the change to be made with respect to the monetary share and first learned of it several days after the meeting. Wynne’s testimony is vague and confusing. That of Allen is more or less negative. Questioned about his conversation with Hogan, Wynne testified Hogan was mad and he was “* * * trying to play him by ear.” Wynne said he told Hogan:
“ ‘ * * * I am for Herritage Tool & Supply. Cut us plumb out. That’s fine.’ He said, T will put you all in there for *837 something.’ I said, ‘Whatever you put in there is fine with us.’ I made this statement too after I said that to him, ‘When Elmer gets back, you all work it out.’ ” Again Wynne said:
“ * * * I knew the deal was blowed. * * * ”
Wynne’s memory seemed extremely poor and he said that he was postponing the matter until it could be considered by Elmer Herritage. Apparently there was no postponement. The parties did not meet thereafter and of course the contract with LeTourneau had been executed.
The agreement made by Webline to pay Herritage the six per cent fee was oral. The record gives no indication though that Charles Webb at any time failed to recognize his obligation to Herritage and the record is clear that his final consent to the change was predicated on his understanding that Herritage had consented to the change in its remuneration as proposed by the LeTourneau offer. Under such circumstances the law does not require written evidence of Herritage’s assent to the contract. Pertinent here is LSA-C.C. art. 1811, which reads:
“The proposition as well as the assent to a contract may be express or implied:
Express when evinced by words, either written or spoken;
Implied, when it is manifested by actions, even by silence or by inaction, in cases in which they can from circumstances be supposed to mean, or by legal presumption are directed to be considered as evidence of an assent.”
The trial judge, without assigning written reasons, concluded that Webline was obligated to Herritage for $6,000 only, which sum represented the $5,000 fee included in the contract between LeTourneau and Webline and the additional sum of $1,000 which Webb had agreed to pay Her-ritage for eliminating a penalty clause included in the LeTourneau contract. Web-line deposited in the registry of the court a balance of $3,000 which it admitted owing at the time of trial. In this case the conclusions of the trial court were necessarily based upon the credibility of the witnesses. We have carefully reviewed the record and find no basis for reversible error.
Judgment is affirmed at appellant’s cost.